IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANESE JONES<br>893 Bellville Johnsville Road<br>Bellville, Ohio 44813 | )<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| DANOP, LTD.<br>c/o Daniel M. Coles<br>3619 State Route 113 E<br>Milan, Ohio 44846 | )<br>)<br>)<br>)<br>)<br>) | **(Jury Demand Endorsed Herein)** |
| Defendant. | ) | |

Plaintiff, Janese Jones, by and through undersigned counsel, as her Complaint against Defendant Danop, Ltd. d/b/a Mickey Mart ("Mickey Mart"), states and avers the following:

**PARTIES, VENUE, & JURISDICTION**

1. Jones is a resident of the city of Bellville, Richland County, Ohio.

2. At all times herein, Jones was acting in the course and scope of her employment.

3. Mickey Mart is a domestic corporation that does business at 61 Mill Road, Bellville, Richland County, Ohio 44813.

4. Mickey Mart is and, at all times herein, was an employer within the meaning of R.C. § 4112.01(A)(2).

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Jones is alleging Federal Law Claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. § 2000e; The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

6. All material events alleged in this Complaint occurred in Richland County, Ohio.

7. This Court has supplemental jurisdiction over Jones's state law claims pursuant to 28 U.S.C. § 1367 as Jones's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Jones filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 22A-2020-01124 against Mickey Mart ("Jones EEOC Charge").

10. On or about September 18, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Jones regarding the Charges of Discrimination brought by Jones against Mickey Mart in the Jones EEOC Charge.

11. Jones received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Jones has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Jones has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Jones is a former employee of Mickey Mart.

15. On or about April 27, 2013, Jones began working for Mickey Mart.

16. Mickey Mart initially employed Jones as a cashier.

17. In or about 2013, Mickey Mart promoted Jones to manager.

18. Jones worked at Mickey Mart's location at 61 Mill Road, Bellville, Richland County, Ohio 44813 ("Bellville Location").

19. Mickey Mart was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

20. At all times relevant herein, Jones was employed by Mickey Mart for at least 12 months and had at least 1,250 hours of service with Mickey Mart and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

21. Jones is biracial, with one Caucasian parent and one African American parent.

22. Jones is a member of a protected class on the basis of her race.

23. Jones is light-skinned.

24. Because of Jones's skin tone, some people who meet Jones assume she is Caucasian.

25. Prior to June 2019, Kent Kick assumed Jones was Caucasian.

26. Kick was Jones's district manager.

27. Kick was Jones's immediate superior at Mickey Mart.

28. Kick is Caucasian.

29. In or about January or February 2019, Kick referred to someone as a "nigger-lover" ("N-word Comment").

30. Kick made the N-word Comment in the course and scope of his employment.

31. Kick made the N-word Comment while he was at the Bellville Location.

32. Jones witnessed the N-word Comment.

33. The N-word Comment established a hostile work environment on the basis of race.

34. The hostile work environment established by the N-word Comment constituted an adverse employment action.

35. In or about June 2019, Jones's brother came to visit her at the Bellville Location ("Brother Visit").

36. Kick was present for the Brother Visit.

37. In or about June 2019, Kick met Jones's brother.

38. Jones's brother is biracial.

39. Jones's brother has darker skin than Jones.

40. During the Brother Visit, Kick learned that Jones is biracial.

41. In or about June 2019, Kick learned that Jones is biracial.

42. Prior to the Brother Visit, Kick asked other managers to inform their employees that they could get extra hours by helping Jones when the Bellville Location was short-staffed.

43. After the Brother Visit, Kick did not ask other managers to inform their employees that they could get extra hours by helping Jones when the Bellville Location was short-staffed ("Staffing Discrimination").

44. Kick committed the Staffing Discrimination because of Jones's race.

45. Kick committed the Staffing Discrimination intentionally.

46. Kick committed the Staffing Discrimination willfully.

47. The Staffing Discrimination was an adverse employment action.

48. Because of the Staffing Discrimination, Jones needed to work more hours to get her work done.

49. Mickey Mart paid Jones on a salary basis.

50. Mickey Mart paid Jones the same amount of money regardless of how many hours she worked in a week.

51. Prior to the Brother Visit, Jones usually worked five days a week.

52. After the Brother Visit, Jones usually worked seven days a week.

53. After the Brother Visit, Jones usually worked seven days a week because of the Staffing Discrimination.

54. On or about July 3, 2019, Jones slipped and fell at work ("Workplace Injury").

55. In the Workplace Injury, Jones injured her back, neck, and leg.

56. In the Workplace Injury, Jones got a bulging disc, a pinched nerve, and a torn quadricep.

57. The Workplace Injury was a serious health condition within the meaning of FMLA.

58. On or about July 3, 2019, Jones informed Kick about the Workplace Injury.

59. On or about July 3, 2019, Jones informed Bridget Corriveau about the Workplace Injury.

60. Corriveau was a representative of Mickey Mart's human resources department.

61. Corriveau is Caucasian.

62. On or about July 3, 2019, Jones informed Kick via text message that she needed to take time off work due to her Workplace Injury.

63. On or about July 4, 2019, Jones updated Kick about her Workplace Injury via text message.

64. On or about July 5, 2019, Jones updated Kick about her Workplace Injury via text message.

65. On or about July 8, 2019, Jones informed Corriveau via email that she needed to take time off work due to her Workplace Injury.

66. On or about July 9, 2019, Jones updated Corriveau about her Workplace Injury via phone call.

67. On or about July 11, 2019, Jones updated Corriveau about her Workplace Injury via email.

68. On or about July 12, 2019, Jones updated Corriveau about her Workplace Injury via email.

69. Jones's Workplace Injury significantly limited her ability to walk.

70. Because of the Workplace Injury, Jones had a physical impairment that significantly limited her in one or more major life activities.

71. Because of the Workplace Injury, Mickey Mart perceived Jones as disabled.

72. Jones was disabled within the meaning of ADA.

73. Jones was disabled within the meaning of R.C. § 4112.01 *et seq.*

74. On or about July 3, 2019, Jones was eligible for FMLA leave.

75. Beginning on or about July 3, 2019, Jones took leave from work due to her Workplace Injury.

76. On or about July 3, 2019, Kick approved Jones to take leave.

77. On or about July 3, 2019, Corriveau approved Jones to take leave.

78. Mickey Mart did not inform Jones that she was eligible for FMLA leave.

79. Mickey Mart did not provide Jones with paperwork to fill out to take FMLA leave.

80. On or about July 12, 2019, Mickey Mart terminated Jones's employment ("Termination").

81. The Termination was an adverse employment action.

82. The Termination was an adverse action.

83. Corriveau informed Jones about the Termination.

84. Corriveau informed Jones about the Termination via email.

85. On or about July 12, 2019, Corriveau alleged that the reason for the Termination was that Jones had been absent from work.

86. Jones was absent from work due to her Workplace Injury.

87. Jones was absent from work due to a serious health condition.

88. Jones notified Kick that she would be absent from work.

89. Jones notified Corriveau that she would be absent from work.

90. Mickey Mart's stated reason for the Termination, if true, was a violation of FMLA.

91. Mickey Mart's stated reason for the Termination was not a sufficient basis to justify the Termination.

92. Mickey Mart's stated reason for the Termination was pretextual.

93. Mickey Mart has a progressive disciplinary policy ("Discipline Policy").

94. In the Discipline Policy, the lowest level of discipline is a verbal warning.

95. Jones did not receive a verbal warning before the Termination.

96. In the Discipline Policy, a written warning is a higher level of discipline than a verbal warning.

97. Jones did not receive a written warning before the Termination.

98. In the Discipline Policy, a suspension is a higher level of discipline than a written warning.

99. Jones did not receive a suspension before the Termination.

100. Mickey Mart knowingly skipped progressive disciplinary steps in terminating Jones.

101. Mickey Mart knowingly terminated Jones's employment.

102. Mickey Mart knowingly took an adverse employment action against Jones.

103. Mickey Mart knowingly took an adverse action against Jones.

104. Mickey Mart intentionally skipped progressive disciplinary steps in terminating Jones.

105. Mickey Mart intentionally terminated Jones's employment.

106. Mickey Mart intentionally took an adverse employment action against Jones.

107. Mickey Mart intentionally took an adverse action against Jones.

108. Mickey Mart knew that skipping progressive disciplinary steps in terminating Jones would cause Jones harm, including economic harm.

109. Mickey Mart knew that terminating Jones would cause Jones harm, including economic harm.

110. Mickey Mart willfully skipped progressive disciplinary steps in terminating Jones.

111. Mickey Mart willfully terminated Jones's employment.

112. Mickey Mart willfully took an adverse employment action against Jones.

113. Mickey Mart willfully took an adverse action against Jones.

114. On or about July 12, 2019, Mickey Mart terminated Jones's employment because of her race.

115. On or about July 12, 2019, Mickey Mart terminated Jones's employment because of her disability.

116. On or about July 12, 2019, Mickey Mart terminated Jones's employment because of her perceived disability.

117. On or about July 12, 2019, Mickey Mart terminated Jones's employment in order to prevent her from using FMLA leave.

118. On or about July 12, 2019, Mickey Mart terminated Jones's employment in retaliation for her use of qualified FMLA leave.

119. On or about July 12, 2019, Mickey Mart terminated Jones's employment in order to prevent her from applying for Workers' Compensation.

120. As a direct and proximate result of Mickey Mart's conduct, Jones suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

121. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

122. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

123. Mickey Mart is a covered employer under FMLA.

124. During her employment, Jones qualified for FMLA leave.

125. Mickey Mart failed to advise Jones of her rights under FMLA.

126. Mickey Mart unlawfully interfered with Jones's exercise of her rights under FMLA in violation of Section 105 of FMLA and section 825.220 of the FMLA regulations.

127. Mickey Mart's act of terminating Jones's employment during her FMLA leave violated and interfered with Jones's FMLA rights.

128. Mickey Mart violated section 825.300(c)(1) of FMLA and interfered with Jones's FMLA rights when Mickey Mart did not honor Jones's approved use of FMLA leave.

129. As a direct and proximate result of Mickey Mart's conduct, Jones is entitled to all damages provided for in 29 U.S.C. § 2617.

## COUNT II: RETALIATION IN VIOLATION OF FMLA

130. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131. During her employment, Jones utilized FMLA leave.

132. After Jones utilized her qualified FMLA leave, Mickey Mart retaliated against her.

133. Mickey Mart retaliated against Jones by terminating her employment.

134. Mickey Mart willfully retaliated against Jones in violation of 29 U.S.C. § 2615(a).

135. As a direct and proximate result of Mickey Mart's wrongful conduct, Jones is entitled to all damages provided for in 29 U.S.C. § 2617.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

136. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

137. Mickey Mart treated Jones differently than other similarly-situated employees based on her disabling condition.

138. Mickey Mart treated Jones differently than other similarly-situated employees based on her perceived disabling condition.

139. On or about July 12, 2019, Mickey Mart terminated Jones's employment without just cause.

140. Mickey Mart terminated Jones's employment based on her disability.

141. Mickey Mart terminated Jones's employment based on her perceived disability.

142. Mickey Mart violated ADA when it discharged Jones based on her disability.

143. Mickey Mart violated ADA when it discharged Jones based on her perceived disability.

144. Mickey Mart violated ADA by discriminating against Jones based on her disabling condition.

145. Mickey Mart violated ADA by discriminating against Jones based on her perceived disabling condition.

146. As a direct and proximate result of Mickey Mart's conduct, Jones suffered and will continue to suffer damages.

## COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

147. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

148. Mickey Mart treated Jones differently than other similarly-situated employees based on her disabling condition.

149. Mickey Mart treated Jones differently than other similarly-situated employees based on her perceived disabling condition.

150. On or about July 12, 2019, Mickey Mart terminated Jones's employment without just cause.

151. Mickey Mart terminated Jones's employment based on her disability.

152. Mickey Mart terminated Jones's employment based on her perceived disability.

153. Mickey Mart violated R.C. § 4112.02 when it discharged Jones based on her disability.

154. Mickey Mart violated R.C. § 4112.02 when it discharged Jones based on her perceived disability.

155. Mickey Mart violated R.C. § 4112.02 by discriminating against Jones based on her disabling condition.

156. Mickey Mart violated R.C. § 4112.02 by discriminating against Jones based on her perceived disabling condition.

157. As a direct and proximate result of Mickey Mart's conduct, Jones suffered and will continue to suffer damages.

## COUNT V: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

158. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

159. Throughout her employment, Jones was fully competent to perform her essential job duties.

160. Mickey Mart treated Jones differently than other similarly-situated employees based on her race.

161. Mickey Mart violated Title VII by discriminating against Jones due to her race.

162. Mickey Mart created a hostile work environment on the basis of race.

163. On or about July 12, 2019, Mickey Mart terminated Jones without just cause.

164. At all times material herein, similarly-situated non-biracial employees were not terminated without just cause.

165. Mickey Mart terminated Jones based on her race.

166. Mickey Mart violated Title VII when it terminated Jones based on her race.

167. As a direct and proximate result of Mickey Mart's conduct, Jones has suffered and will continue to suffer damages.

## COUNT VI: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

168. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

169. Throughout her employment, Jones was fully competent to perform her essential job duties.

170. Mickey Mart treated Jones differently than other similarly-situated employees based on her race.

171. Mickey Mart violated R.C. § 4112.02(A) *et seq.* by discriminating against Jones due to her race.

172. Mickey Mart created a hostile work environment on the basis of race.

173. On or about July 12, 2019, Mickey Mart terminated Jones without just cause.

174. At all times material herein, similarly-situated non-biracial employees were not terminated without just cause.

175. Mickey Mart terminated Jones based on her race.

176. Mickey Mart violated R.C. § 4112.01 *et seq.* when it terminated Jones based on her race.

177. As a direct and proximate result of Mickey Mart's conduct, Jones has suffered and will continue to suffer damages.

**COUNT VII: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

178. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

179. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid a Workers' Compensation claim.

180. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

181. Specifically, in *Sutton v. Tomco Machine*, the Ohio Supreme Court noted, "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured

employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim." (*Sutton v. Tomco Machine*, 129 Ohio.St. 3d 153, 163 (2011)).

182. Mickey Mart's termination of Jones jeopardizes these public policies.

183. Mickey Mart's termination of Jones was motivated by conduct related to these public policies.

184. Mickey Mart had no overriding business justification for terminating Jones.

185. As a direct and proximate result of Mickey Mart's conduct, Jones has suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Jones respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Mickey Mart retroactively to restore Jones to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Mickey Mart of compensatory and monetary damages to compensate Jones for physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Mickey Mart in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Jones's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Paul Filippelli*

Fred M. Bean (0086756)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: fred.bean@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com

*Attorneys for Plaintiff Janese Jones*

## **JURY DEMAND**

Plaintiff Jones demands a trial by jury by the maximum number of jurors permitted.

*/s/ Paul Filippelli*

Fred M. Bean (0086756)
Paul Filippelli (0097085)